Dennis Mitchell ORBE, Petitioner,

v.

William Page TRUE, Warden, Sussex I State Prison, Respondent.

No. CIV.A.01–1845–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 22, 2002.

Robert Lee Jenkins, Jr., Bynum & Jenkins, P.L.L.C., Alexandria, VA, Michelle Jill Brace, Virginia Capital Representation Res. Ctr., Charlottesville, VA, for Petitioner.

Katherine Pharis Baldwin, Office of the Attorney General, Richmond, VA, for Respondent.

### *MEMORANDUM OPINION*

ELLIS, District Judge.

Petitioner, whose death sentence has been stayed to allow him the opportunity to petition for a writ of habeas corpus, has filed two prepetition motions: (1) a motion seeking an order preserving all evidence relating to petitioner's conviction and sentence, and (2) a motion seeking discovery in the form of depositions of the jurors who convicted petitioner. These motions present the following questions:

(i) whether an order to preserve evidence should issue where the request does not identify with specificity the evidence to be preserved and is broadly directed to numerous state and local government entities;

(ii) whether federal district courts in capital habeas cases have the power to order prepetition discovery; and

(iii) if so, whether a petitioner should be allowed to depose trial jurors on the issue of possible juror intimidation on the basis of "glares" allegedly directed towards jurors by members of petitioner's family during the trial.

## I.[1]

Petitioner Dennis Mitchell Orbe was sentenced to death for the January 24, 1998 murder of Richard Sterling Burnett, a convenience store clerk in York county, Virginia. A surveillance videotape focused on the cash register of the store showed that Orbe entered the store, pointed a revolver at Burnett's chest, and then shot Burnett after Burnett had opened the cash register drawer. After the shooting, Orbe walked around the counter, reached into the cash register drawer, and removed some money. Orbe was apprehended a week after the shooting based on tips generated when police published pictures from the surveillance videotape.

Orbe was indicted, tried, and convicted in the Circuit Court of York County, Virgi-

nia. Specifically, the jury convicted Orbe of capital murder, robbery, and the use of a firearm while committing murder and committing robbery. During the sentencing phase of the trial, the Commonwealth presented evidence of other violent crimes Orbe committed in the days prior and subsequent to the murder. Ultimately, the jury sentenced Orbe to death and the Supreme Court of Virginia affirmed the conviction and the sentence. Thereafter, the United States Supreme Court denied certiorari review of Orbe's conviction and sentence. *See Orbe v. Virginia*, 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000). Orbe was also unsuccessful in his quest for relief by way of a state habeas corpus proceeding.[2] He now seeks federal habeas review pursuant to 28 U.S.C. § 2254.

Orbe's trial counsel did not speak with the jurors following Orbe's trial.[3] Later, in connection with Orbe's state habeas corpus proceeding, new counsel for Orbe contacted the eleven jurors from Orbe's trial who were then living in Virginia. Ten of the eleven jurors refused to discuss the trial in any way.[4] The eleventh juror

---

**1.** For a complete recounting of the facts, see *Orbe v. Commonwealth*, 258 Va. 390, 519 S.E.2d 808 (1999), *cert. denied Orbe v. Virginia*, 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000).

**2.** Orbe's habeas corpus petition before the Supreme Court of Virginia was dismissed, *see Orbe v. Warden*, No. 001708 (Va. Sept. 10, 2001) (order), and his petition for rehearing was also denied, *see Orbe v. Warden*, No. 001708 (Va. Nov. 2, 2001) (order). Following this, the United States Supreme Court denied certiorari review of the denial of Orbe's state habeas petition. *See Orbe v. Taylor*, —— U.S. ——, 122 S.Ct. 1089, 151 L.Ed.2d 988 (2002).

**3.** Virginia law permits counsel to communicate with jurors after they are discharged from further consideration of a case. *See* Va. Rules of Prof'l Cond. R. 3.5, cmt. [1a] ("After

the trial, communication by a lawyer with jurors is permitted so long as the lawyer refrains from asking questions or making comments that tend to harass or embarrass the juror or to influence actions of the juror in future cases. Were a lawyer to be prohibited from communicating after trial with a juror, the lawyer could not ascertain if the verdict might be subject to legal challenge, in which event the invalidity of a verdict might go undetected."). *But see* Local Rule of Practice 83.5 (E.D.Va. Sept. 1, 2000) (prohibiting parties and attorneys from communicating with jurors regarding the verdict or jury deliberations without leave of court).

**4.** Once a juror makes clear that he or she does not want to talk, counsel are obligated under the Virginia Rules of Professional Conduct to terminate the interview, as further

spoke with Orbe's counsel and allegedly told counsel that some of the jurors were intimidated by "glares" from members of Orbe's family during the trial. The juror then refused Orbe's counsel's request to repeat this statement under oath in an affidavit. Yet later this juror provided an affidavit to the Warden's counsel that was submitted by the Warden in connection with the state habeas proceeding. In that affidavit, the juror stated that he observed that some members of Orbe's family "glared" at the jury during the trial, but that the jury was not influenced by the glares.

Orbe filed a motion in the state habeas proceeding for leave to depose the trial jurors based on the statements about intimidation allegedly made to Orbe's counsel by the eleventh juror. The Warden opposed the motion, and the Supreme Court of Virginia denied the motion without comment in its order dismissing Orbe's state habeas petition. *See Orbe v. Warden*, No. 001708, at 14 (Va. Sept. 10, 2001) (order).

Orbe's execution was scheduled for December 13, 2001, by the Circuit Court of York County. On December 6, 2001, this Court granted Orbe's motion for a stay of execution and appointed Orbe's state habeas counsel and additional counsel to represent Orbe in connection with his federal petition.[5] By Order dated December 14, 2001, Orbe was given approximately five months, until May 10, 2002, to file an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.[6] Prior to the submission of his habeas petition, Orbe has filed motions (i) to preserve the evidence; and (ii) for leave to depose the trial jurors. Each motion is separately addressed.

## II.

Orbe seeks an order directing the preservation of "all evidence, documents, and things" relating "to the commission of, apprehension for, or trial of Dennis Orbe for any of the offenses he committed in January 1998."[7] He contends that this broad preservation order is necessary to maintain the status quo and to ensure that all potentially relevant materials will be available for examination or testing in connection with his federal habeas petition and any other possible future proceedings. While it is clear that Orbe's request is quite broad, covering everything relating in any way to his crimes, it is also clear that he is especially interested in the preservation of the surveillance videotape from

---

questioning would be considered harassment. *See* Va. Rules of Prof'l Cond. R. 3.5, cmt.[1a].

5. *Orbe v. True*, Civil No. 01–1845 (E.D.Va. Dec. 6, 2001) (order).

6. *Orbe v. True*, Civil No. 01–1845 (E.D.Va. Dec. 14, 2001) (order). The Order also declared that Virginia is not an "opt-in" jurisdiction with respect to 28 U.S.C. § 2261. *See Cardwell v. Netherland*, 971 F.Supp. 997, 1013 n. 21 (E.D.Va.1997), *aff'd sub nom. Cardwell v. Greene*, 152 F.3d 331 (4th Cir.1998), *cert. denied* 525 U.S. 1037, 119 S.Ct. 587, 142 L.Ed.2d 491 (1998) (explaining the significance of Virginia not being an "opt-in" jurisdiction).

7. Orbe requests that the order be directed to the Circuit Courts of York County, New Kent County, Chesterfield County, and the City of Richmond; the Commonwealth's Attorneys of York County, New Kent County, Chesterfield County, and the City of Richmond; the Police Departments of New Kent County, Chesterfield County, and the City of Richmond; the Sheriff's Office of York County; the Chief Medical Examiner of Virginia; the Virginia Division of Forensic Science; and the Attorney General of Virginia with respect to any items in their custody or control.

the convenience store.[8]

■ The constitutional duty of a state to preserve evidence is limited to evidence that might reasonably be expected to play a role in a suspect's defense. *See California v. Trombetta,* 467 U.S. 479, 489–90, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). To satisfy this standard, the evidence must possess apparent exculpatory value and must also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Virginia law imposes an additional statutory safeguard, mandating that all human biological evidence be preserved in death penalty cases until execution. *See* Va.Code § 19.2–270.4:1(B). Significantly, Orbe has pointed to no evidence under the Commonwealth's control that would be protected by either the *Trombetta* constitutional standard[9] or the Virginia statutory standard. It follows that neither of these standards compel the entry of a mandatory preservation order in this case.

■ But this does not end the analysis of whether a preservation order should enter, as it is clear that federal courts have inherent discretionary power to issue orders in aid of their jurisdiction. *See* 28 U.S.C. § 1651 (All Writs Act). And, such an order may extend, "under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate ... the proper administration of justice." *United States v. New York Tel. Co.,* 434 U.S. 159, 174, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) (discussing the All Writs Act). The question then is whether Orbe's requested order is necessary or appropriate here to ensure the proper administration of justice.

■ To begin with, no preservation order is needed to protect and preserve the videotape of the shooting, the sole specific item of evidence identified by Orbe. This videotape is already in federal custody, as are various other items of physical evidence, exhibits, pleadings, and transcripts from all of the state court proceedings in Orbe's capital murder case. And, Orbe readily concedes that no preservation order is needed with respect to those items.[10] But the preservation order Orbe seeks extends well beyond the materials in his state habeas record, which are now part of his federal habeas record. Thus, Orbe seeks a general order requiring preservation of all police records and other state records or materials relating to both the murder for which he was convicted and to any other offenses he committed before and after the murder in January 1998.[11] What Orbe seeks, in effect, is an order enjoining any government entity in Virgi-

8. The security camera at the convenience store recorded events at a rate of approximately one frame per second. The actual shooting occurred between frames of the video. In his state habeas proceeding, Orbe argued that future technology might one day enable an expert to scan the security video image to determine whether there are line-by-line discontinuities indicating that Orbe's hand was shaking, which, in turn, might support the contention that Orbe fired the gun inadvertently rather than deliberately.

9. The videotape has no apparent exculpatory value at this time; any value it may have to

petitioner sometime in the future is entirely speculative.

10. The Clerk of Court retains all materials deposited with the Court until thirty days after the judgment has become final and the time for appeal or application for a rehearing or further hearing has passed. *See* Local Rule of Practice 79(C) (E.D.Va. Sept. 1, 2000).

11. Orbe has not indicated how any of the other unspecified evidence or documents that he seeks to have preserved might be relevant to his habeas petition, let alone exculpatory.

nia from destroying any document or other material that relates in any way to his conviction and sentencing. Such an order is so excessively broad and vague .as to make it difficult, if not impossible, to ensure compliance. Moreover, in the absence of specific, substantial allegations that exculpatory evidence is being, or may be, destroyed, such a broad and vague order would place an unnecessary and impractical burden on the Commonwealth.

■ In sum, courts should decline to enter orders directing preservation of evidence where, as here, the requesting party fails to describe with reasonable particularity the evidence to be preserved, its materiality or exculpatory potential, and the identity of the custodian of such evidence. Accordingly, petitioner's motion to preserve evidence must be denied.

## III.

### A.

■ Orbe's motion to depose the trial jurors raises a threshold question whether federal district courts have the authority to order discovery prior to the filing of a capital habeas petition. The Rules Governing § 2254 Proceedings for the United States District Courts [12] (hereinafter "Habeas Rules") do not specifically address the issue of timing of discovery, nor has the issue been resolved by the Fourth

Circuit Court of Appeals. *See In re Pruett*, 133 F.3d 275 (4th Cir.1997) (vacating a prepetition discovery order because the order was entered *ex parte*, but declining to reach the question whether prepetition discovery is permissible in other circumstances).[13] Only the Ninth Circuit has squarely addressed the issue, determining that prepetition discovery is impermissible. *See Calderon v. United States District Court (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir.1996).[14] The Ninth Circuit offered four reasons for its ruling in *Calderon;* each of which was held independently sufficient to deny prepetition discovery in that case: (i) a district court cannot determine the propriety of discovery until a prisoner has outlined factual allegations in his petition; (ii) the petition must contain unexhausted claims capable of review in federal court; (iii) discovery is not available to conduct a fishing expedition based on mere speculation; and (iv) discovery under Habeas Rule 6 is limited to "the processes of discovery available under the Federal Rules of Civil Procedure," which rules do not permit precomplaint discovery.[15] *Id.*

Orbe attempts to distinguish *Calderon,* arguing that three of the four reasons do not apply here and that the other reason is overstated in *Calderon.* With respect to the first reason, Orbe claims that he has already outlined his factual allegations because he appended to his discovery motion

---

**12.** 28 U.S.C. foll. § 2254.

**13.** It is well-settled, however, that a district court can perform several other functions prior to the filing of a § 2254 petition, including appointing counsel, entering a stay of execution, and granting "preapplication legal assistance." *See McFarland v. Scott*, 512 U.S. 849, 855, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) (interpreting 21 U.S.C. §§ 848(q)(4)(B) and (q)(9); 28 U.S.C. § 2251).

**14.** The Sixth Circuit approvingly cited to *Calderon* in an unpublished opinion, but did not

rely exclusively on that ground in affirming the district court's decision to deny the motion for discovery. *United States v. Tamayo*, 238 F.3d 425, 2000 WL 1871673 at *1 (6th Cir.2000) (unpublished).

**15.** The Ninth Circuit noted the one exception in Rule 27(a), Fed.R.Civ.P., which allows precomplaint discovery where a party can show the need to perpetuate testimony that may not be available later. That exception was not in issue in *Calderon* and is not in issue here.

the allegations made in his state habeas proceeding, and he intends to plead those same allegations when he files his federal habeas petition. Consequently, he claims there is a proper basis for determining the propriety of the requested discovery. With respect to the second reason, Orbe argues that his claim of juror misconduct is fully exhausted and is not procedurally defaulted.[16] With respect to the third reason, Orbe argues that he is not conducting a fishing expedition, but pursuing facts the Warden introduced into evidence when he submitted the eleventh juror's affidavit in state court. Assuming without deciding that Orbe can successfully argue that the first three reasons relied on in *Calderon* do not apply in his case, it is nonetheless clear that he cannot escape the fourth reason, namely that discovery in habeas proceedings is limited to that allowed by the Federal Rules of Civil Procedure, which do not provide for prepetition or precomplaint discovery except in very limited circumstances not present here.[17]

■ On this point, Orbe argues that the Ninth Circuit's conclusion that the Federal Rules of Civil Procedure do not permit precomplaint discovery is overstated. He correctly points out that the Federal Rules expressly prohibit discovery prior to the Rule 26(f) conference. *See* Fed.R.Civ.P. 26(d) (addressing the timing and sequence of discovery). And, certain enumerated actions, including habeas corpus proceed-

ings, are expressly exempted from Rule 26(f). *See* Fed.R.Civ.P. 26(a)(1)(E)(ii). According to Orbe, therefore, no Rule governs or limits the timing of discovery in proceedings that are exempt from Rule 26(f) and hence the Rules are no barrier to prepetition discovery in habeas cases. Orbe's argument is unpersuasive; it misses the fundamental point that for there to be any discovery at all, it must be allowed by the Federal Rules of Civil Procedure,[18] and there is no provision in the Federal Rules of Civil Procedure that would permit the prepetition (i.e. precomplaint) discovery Orbe seeks. Put differently, the fact that habeas proceedings are not subject to Rule 26(f)'s timing restriction for commencement of discovery in no way changes that discovery in habeas proceedings is governed by the Federal Rules, which plainly do not allow precomplaint or prepetition discovery.

Indeed, Orbe appropriately concedes, as he must, that civil litigants cannot commence discovery until the plaintiff has filed a complaint. Yet, he argues that capital habeas proceedings are different, and should be treated differently. The primary difference Orbe points to is the time of "commencement" of the proceeding. An ordinary civil action is commenced by the bright-line act of filing a complaint, and Orbe argues there is no equivalent bright line act for the commencement of

---

**16.** *See Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (discussing the procedural default doctrine); *Oken v. Corcoran*, 220 F.3d 259, 264–65 (4th Cir.2000) (applying the procedural default doctrine).

**17.** *See supra* note 15.

**18.** The Rule 26(d) prohibition that Orbe cites is a prohibition of discovery that would otherwise appear to be permitted by the Rules following the filing of a complaint—it does not address precomplaint discovery. There is

no Rule 26(f) conference in habeas corpus actions and discovery in habeas corpus actions is only permitted with leave of court. *See* Habeas Rule 6. Thus, with respect to habeas corpus actions, it is only sensible that the prohibition on discovery prior to the Rule 26(f) conference does not operate. Additionally, the existence of a specific provision in Rule 27(a) to allow precomplaint discovery in certain situations reinforces the point that precomplaint discovery is not allowed where not specifically provided for.

proceedings in capital habeas cases. Orbe also notes that prior to the filing of a petition, a court may order a stay of execution, appoint counsel to assist with the petition, and authorize funds for legal assistance.[19] Orbe observes that two of those steps have already been taken here with the orders appointing legal counsel and staying Orbe's execution; he also argues that additional steps sufficient to "commence" the proceedings in his case have been taken with the issuance of a scheduling order[20] and a ruling on the merits of Orbe's motion for a declaration that Virginia is not an opt-in jurisdiction.[21] Finally, Orbe argues that discovery with respect to a capital habeas petition should be treated differently from discovery in other civil cases because a habeas "petition is expected to state facts that point to a real possibility of constitutional error,"[22] while an ordinary civil complaint requires only notice pleading. This is significant, Orbe claims, because it would be irrational to preclude discovery of the facts in a habeas case until after the petition has been filed when the petition is required to set forth the facts that support the claim. Although not without some force, Orbe's argument for allowing prepetition discovery is ultimately unconvincing because it fails to distinguish capital habeas proceedings from other civil proceedings with respect to discovery.

A habeas proceeding is generally commenced by the filing of a habeas petition. This is clear from the Federal Rules of Civil Procedure,[23] the Habeas Rules, and the Habeas statute.[24] Rule 3 of the Federal Rules of Civil Procedure states that "[a] civil action is commenced by filing a complaint." The analogue to a complaint in the habeas context is an "application . . . in the form of a petition for a writ of habeas corpus." Habeas Rule 2(a).

■ *McFarland* is not to the contrary. At issue there was a district court's authority in capital habeas cases to order the appointment of counsel, pursuant to 21 U.S.C. § 848(q)(4)(B), and to order a stay of execution, pursuant to 28 U.S.C. § 2251. In this respect, *McFarland* held that a motion for appointment of counsel and a stay of execution commences a capital habeas proceeding only for *those limited purposes*. See *McFarland*, 512 U.S. at 859, 114 S.Ct. 2568. In reaching this conclusion, the Supreme Court reasoned that the right to appointed counsel is meaningless unless it attaches before filing a habeas petition and unless it implicates a district court's authority to order a stay of execution, which would then allow appointed counsel the time to assist with the filing of a habeas petition. See *McFarland*, 512 U.S. at 855–58, 114 S.Ct. 2568. Significantly, however, *McFarland* neither holds nor suggests that a capital habeas proceeding is commenced for *all purposes* by

**19.** See *McFarland v. Scott,* 512 U.S. 849, 855, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994); *see also* 21 U.S.C. §§ 848(q)(4)(B) and (q)(9).

**20.** *Orbe v. True,* Civil No. 01–1845 (E.D.Va. Dec. 14, 2001) (order).

**21.** *Id.*

**22.** *Blackledge v. Allison,* 431 U.S. 63, 76 n. 7, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *see also* Habeas Rule 2(c) ("[The petition] shall specify all the grounds for relief which are

available to the petitioner . . . and shall set forth in summary form the facts supporting each of the grounds thus specified.").

**23.** The Federal Rules of Civil Procedure apply in the context of habeas suits to the extent that they are not inconsistent with the Habeas Rules. *See* Habeas Rule 11; Fed.R.Civ.P. 81(a)(2).

**24.** 28 U.S.C. § 2254(e)(1) ("In a proceeding *instituted by an application for a writ of habeas corpus . . . .") (emphasis added).*

the filing of a motion for appointment of counsel and a stay of execution. To the contrary, the rationale of *McFarland* plainly has no application to prepetition discovery: the authority to grant prepetition discovery is not necessary to give meaning to the right to appointed counsel. In short, *McFarland* provides no basis for concluding that a motion for appointment of counsel and a stay of execution constitute commencement of a capital habeas proceedings for all purposes, including discovery.

*McFarland* is premised on the proposition that a capital habeas proceeding is different from other habeas proceedings only with respect to the right to appointed counsel and the significance of a stay of execution. Petitioners in capital habeas cases have a right to appointed counsel, whereas other habeas petitioners do not. The authority for a district court to grant a stay of execution also flows from this right to counsel. But, significantly, a capital habeas case is no different from other habeas cases with respect to a request for discovery. Appointed habeas counsel in all cases [25] can adequately perform their function without prepetition discovery. While there is no question that prepetition discovery might be useful in some habeas cases because of the fact-pleading requirement for habeas petitions, there is no basis for distinguishing between capital habeas cases and other habeas cases on this ground given that the same fact-pleading

requirement applies to all habeas petitions. Perhaps most damaging to Orbe's argument is the explicit language of § 2246 of the habeas statute, which specifically allows evidence to be taken "on application for a writ of habeas corpus," [26] thus making clear that prepetition discovery is not authorized. In sum, Orbe's argument that the *McFarland* rationale should extend to prepetition discovery is without merit.

Similarly unconvincing is Orbe's argument that the proceedings in his case have commenced because of the scheduling and "opt-in" orders. Both of those orders relate directly to the orders appointing counsel and staying the execution. The determination whether Virginia is an "opt-in" jurisdiction is necessary to ascertain which claims may be brought in a habeas petition, and is thus related to the right to counsel because counsel must be aware of which types of claims may be raised in the petition before filing the petition.[27] The scheduling order is merely ancillary to the district court's authority to appoint counsel and stay an execution. Thus, the "opt-in" and scheduling orders do not commence the proceedings for discovery purposes any more than do the orders appointing counsel and staying the execution.

In the end, the inescapable fact is that prepetition discovery is neither specifically allowed nor contemplated by the Habeas Rules or the Federal Rules of Civil Procedure. Nor is *McFarland* to the contrary; that decision does no more than define

---

**25.** Non-capital habeas cases typically are *pro se* and do not have appointed counsel.

**26.** The relevant section reads: "On application for a writ of habeas corpus, evidence may be taken orally or by deposition, or, in the discretion of the judge, by affidavit. If affidavits are admitted any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits." 28 U.S.C. § 2246.

**27.** Chapter 154 of Title 28 includes a special exhaustion provision for habeas petitions brought by prisoners in state custody subject to a capital sentence, *see* 28 U.S.C. § 2264; *see generally* 28 U.S.C. § 2261, *et seq.*, but the chapter is inapplicable here given that Virginia is not an "opt-in" state, pursuant to § 2261. *See Cardwell*, 971 F.Supp. at 1013 n. 21. Accordingly, § 2254 provides the exhaustion requirements that will govern Orbe's petition.

narrow exceptions to prepetition court action grounded in the federal statute that grants a capital habeas petitioner the right to counsel. Nothing in *McFarland* invites the creation of a further exception for prepetition discovery. Orbe's argument that discovery is necessary to the preparation of a capital habeas petition because of the fact-pleading requirement of Habeas Rule 2(c) also fails because it is overly broad and provides no basis for distinguishing discovery in capital habeas cases from discovery in other habeas cases, or from discovery in civil cases alleging fraud, where there is also a fact-pleading requirement.[28] It therefore seems clear, as the Ninth Circuit concluded in *Calderon*, that federal district courts do not have authority to order prepetition discovery in capital habeas cases. It follows that Orbe's motion to depose the trial jurors is premature and must be denied.

### B.

■ Even assuming, *arguendo*, that prepetition discovery is permissible in a capital habeas case and that Orbe's claim of juror misconduct has been exhausted, Orbe's motion to depose the trial jurors fails on the merits. He seeks leave to depose the twelve jurors who participated in his trial for capital murder to determine whether there was specific juror misconduct of constitutional dimension (i) that could not have been discovered and raised at trial and on direct appeal; or (ii) that defense counsel had a duty to discover and raise at trial or on direct appeal, but failed to do so, causing petitioner to suffer the requisite prejudice.[29]

■ Federal habeas petitioners, unlike ordinary civil litigants, may not engage in discovery without leave of court.[30] Specifically, Habeas Rule 6 provides in relevant part that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." And, on the issue of good cause, a district court exercising its discretion to grant leave for a habeas petitioner to engage in discovery is governed by the rule of *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997), in which the Supreme Court found good cause for discovery where (i) a petitioner properly alleges the elements of the claim he wishes to prove, and (ii) where specific allegations establish that there is reason to believe that the petitioner may be able to demonstrate that he is entitled to relief if the facts are fully developed. *See Bracy* (citing *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)).

■ The specific allegations here with respect to juror misconduct fall far short of furnishing good cause for discovery as they provide no reason to believe that Orbe would be able to demonstrate entitlement to habeas relief even if discovery were allowed. To establish a claim of juror misconduct resulting from unauthorized contact with third parties, a petitioner bears the initial burden of establishing both that extrajudicial contacts occurred and that they were of such a nature as reasonably to cast doubt on the validity of the jury's verdict. *See Stockton v. Virginia*, 852 F.2d 740, 743 (4th Cir.1988). Such a contact creates a presumption of

---

**28.** *See* Rule 9(b), Fed.R.Civ.P.

**29.** *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**30.** *See* Rule 6, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (hereinafter "Habeas Rule 6").

prejudice so that once such a contact has been established, the government then bears the burden of demonstrating the absence of prejudice. *See Stockton,* 852 F.2d at 743; *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). But significantly, a petitioner's initial burden to establish extrajudicial contacts that cast doubt on a jury's verdict is not a light one. The presumption of prejudice does not arise anytime a juror sees or hears anything at all relating to a case. And jurors are not rendered partial simply because they become aware of community sentiment regarding a case. *See Stockton,* 852 F.2d at 747. The constitutional restraint of "[d]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Stockton* at 747 (quoting *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). Indeed, "[w]ere that the rule, few trials would be constitutionally acceptable." *Id.* Instead, Orbe must bear the initial burden of establishing that "extrajudicial contacts occurred and that they were of such a nature as to reasonably cast doubt on the validity of the jury's verdict." *Id.* Orbe does not meet this burden by alleging that the jury was affected by "glares" from Orbe's family members during the trial. A glare directed at jurors is hardly the type of impermissible extrajudicial contact that gives rise to any doubt concerning the validity of a jury's verdict. Allegations of glares raise no presumption of prejudice. Were this not so, no capital juror would escape deposition, for capital murder cases are emotionally charged events for all participants, and jurors in any such case are likely to feel the weight of the proceeding and may perceive malice in looks cast their way by family members of either the accused or the victim or by other interested spectators.

Because a glare such as that alleged by Orbe, without more, creates no presumption of prejudice, there is no reason to believe that more fully developed facts regarding these glares would enable Orbe to demonstrate that he is entitled to habeas relief. And, to the extent that Orbe intends to inquire about other instances in which the jurors may have been exposed to extraneous influences, his request to depose the trial jurors is merely an impermissible fishing expedition to attempt to find other instances of wrongdoing. *See Calderon,* 98 F.3d at 1106. Accordingly, even assuming *arguendo* the propriety of prepetition discovery in capital habeas cases, Orbe's request to depose the trial jurors must be denied as there is no good cause for such intrusive discovery.

## IV.

For all the foregoing reasons, Orbe's motions to preserve evidence and to depose the trial jurors must be denied. An appropriate order has issued.