Stuart N. GIMBEL, Petitioner,

v.

**COMMODITY FUTURES TRADING
COMMISSION, Respondent.**

Nos. 88–1849 & 88–2029.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1988.

Decided April 10, 1989.

As Corrected April 12, 1989.

As Amended June 13, 1989.

Jeffrey Cole, Jeffrey Neal Cole, Ltd., Chicago, Ill., for petitioner.

Marshall E. Hanbury, Commodity Futures Trading Com'n, Washington, D.C., for respondent.

Before WOOD, Jr. and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

Stuart Gimbel petitions for review of a final order of the Commodity Futures Trading Commission ("Commission"). The Commission, after determining that Gimbel had committed several violations of the Commodity Exchange Act ("Act"), imposed a civil monetary penalty of $115,000, denied petitioner's application for registration as a floor broker at the Chicago Mercantile Exchange and permanently barred him from trading on any contract market. On appeal, Gimbel challenges both the Commission's liability determinations and its imposition of sanctions without a separate hearing. For the reasons stated below, we affirm the Commission's liability determinations and imposition of non-monetary sanctions but reverse its imposition of a civil monetary penalty.

I.

Over the past twenty years, Stuart Gimbel has been one of the largest and most successful commodities traders at the Chicago Mercantile Exchange ("Exchange"). In early 1980, Gimbel, in a series of transactions, invested heavily in lumber futures contracts. This investment, however, ultimately proved to be unsuccessful due to a precipitous drop in the lumber market in April, 1980.

The sharp reversal in the lumber market prompted an investigation by the Chicago

Mercantile Exchange. Based on this investigation, the Exchange charged Gimbel and several others with various abuses in connection with the trading of lumber futures in early 1980. Gimbel eventually entered a plea of nolo contendere to these charges, accepting a fifteen month suspension of trading privileges and a $150,000 fine as a penalty.

Petitioner's problems, however, were not yet over. In 1984, the Commission's Division of Enforcement ("Division") filed a complaint against Gimbel containing additional allegations of misconduct stemming from the 1980 transactions in lumber futures. The complaint alleged *inter alia* that Gimbel engaged in a single "wash sale" in February, 1980, thereby violating section 4c(a)(A) of the Act, failed to disclose the extent of his investments in lumber futures in required reports to the Commission in violation of section 6(b) of the Act, obtained reportable futures positions without filing the required reports in violation of section 4(i) of the Act, and violated a prior cease and desist order of the Secretary of Agriculture.

The charges against Gimbel were evaluated by an administrative law judge ("ALJ") who conducted eight days of hearings over a four-month period in late 1984 and early 1985. At the hearing, the Division, over petitioner's objection, introduced evidence of Gimbel's extensive history of trading abuses in support of its request for a permanent trading ban. In contrast, Gimbel introduced no evidence in mitigation of possible sanctions.

In January, 1986, the ALJ entered an order finding Gimbel liable on all counts. As punishment, the ALJ permanently barred petitioner from trading on any contract market and denied his application for registration as a floor broker at the Exchange. The ALJ, however, did not impose any monetary penalty.

Upon receiving the ALJ's decision, petitioner's counsel filed a motion seeking a separate hearing on the issue of sanctions which was denied by the Assistant Chief of the Commission's Opinions Section. Gimbel then appealed the ALJ's decision to the Commission and the Division cross-appealed the ALJ's refusal to impose a monetary penalty. The Commission affirmed the ALJ's liability determinations and imposition of non-monetary sanctions and also assessed a $115,000 civil monetary penalty. Gimbel appeals from this decision.

## II.

■ Gimbel initially challenges the ALJ's liability determinations on a variety of grounds. First, Gimbel claims that the ALJ was biased. In support of this assertion, petitioner refers us to several places in the record where the ALJ exhibited impatience with Gimbel's counsel.

In order to set aside an ALJ's findings on the grounds of bias, "the ALJ's conduct must be so extreme that it deprives the hearing of that fairness and impartiality necessary to that fundamental fairness required by due process." *N.L.R.B. v. Webb Ford, Inc.*, 689 F.2d 733, 737 (7th Cir.1982). The ALJ's conduct in this case did not even remotely approach this level. Although the ALJ exhibited impatience with petitioner's counsel at times, he also expressed displeasure with opposing counsel. Moreover, on at least two occasions, the ALJ remarked that petitioner's counsel was a good lawyer. Finally, the ALJ ruled in petitioner's favor several times during the course of the hearing. Given these facts, we cannot say that the ALJ's conduct deprived the hearing of the fairness and impartiality required by due process.

■ Gimbel next argues that the ALJ's credibility determinations were erroneous. In his order, the ALJ expressly credited the testimony of Mondi and Sasin, two witnesses who testified against Gimbel, finding them to be, "honest, truthful and straightforward." In contrast, the ALJ refused to believe petitioner's testimony, finding that Gimbel was not, "an honest witness."

Our review of the Commission's adoption of an ALJ's factual findings, which include his credibility determinations, is severely circumscribed. *Chapman v. U.S. Commodity Futures Trading Commission*, 788 F.2d 408, 410 (7th Cir.1986). We re-

view the record in order to determine whether the factual findings of the Commission are supported by the weight of the evidence. 7 U.S.C. § 9. Under this standard we will uphold the Commission's findings if we deem them to have been justified. *Stotler and Co. v. Commodity Futures Trading Comm'n*, 855 F.2d 1288, 1291 (7th Cir.1988); *Silverman v. CFTC*, 549 F.2d 28, 30–31 (7th Cir.1977).

Although a reviewing court generally gives substantial deference to the factual findings of an ALJ, this deference is even greater when credibility determinations are involved. *See Impact Industries, Inc. v. N.L.R.B.*, 847 F.2d 379, 381 (7th Cir.1988). The present case presents a paradigm of when a reviewing court should defer to the credibility assessments of an ALJ. Mondi and Sasin, the witnesses who testified against Gimbel, were vigorously cross-examined by petitioner's counsel who raised substantial difficulties with their testimony. Gimbel's conflicting testimony, however, was also suspect. In these circumstances, the demeanor of the witnesses, is crucial. As the ALJ was the only individual who had the opportunity to observe the demeanor of the witnesses and expressly relied upon his observations in rendering his decision we cannot say that his credibility determinations were erroneous.

■ Petitioner also challenges the ALJ's reliance on damaging hearsay statements made by Philip Getson, a co-defendant in the case, to Thomas Utrata, an investigator for the Exchange. Utrata testified that Getson told him that Gimbel in fact controlled trades in an account that nominally belonged to Getson. Getson invoked the privilege against self-incrimination at the hearing and was thus not amenable to cross-examination about these statements.

It is well settled that hearsay may constitute substantial evidence in administrative hearings if factors assuring the underlying reliability and probative value of the evidence are present. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971); *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 972 (7th Cir. 1984). In the present case, Utrata's testimony was independently corroborated by another witness at the hearing. Given this fact, we cannot conclude that the ALJ's reliance on Utrata's testimony was erroneous.[1]

■ Finally, Gimbel challenges the ALJ's extensive adoption of the Division's proposed findings. The ALJ adopted 88 of the Division's 93 proposed findings in toto. In contrast, the ALJ rejected all 257 of petitioner's proposed findings.

Although we recognize the time constraints under which most ALJ's operate, we strongly disapprove of the practice of adopting the findings submitted by one party and will scrutinize these findings closely. *See Machlett Laboratories, Inc. v. Techny Industries, Inc.*, 665 F.2d 795, 797 (7th Cir.1981); *Garcia v. Rush–Presbyterian—St. Luke's Medical Center*, 660 F.2d 1217, 1220 (7th Cir.1981). Among other things, this practice may create a negative impression about the ALJ's diligence and impartiality. The findings, themselves, however are supported by substantial evidence. Consequently, they will not be overturned on appeal. *See U.S. v. Crescent Amusement Co.*, 323 U.S. 173, 185, 65 S.Ct. 254, 260, 89 L.Ed. 160 (1944).

In sum, we find that the ALJ was not biased and properly relied on the hearsay statements of Philip Getson. In addition, we find that the ALJ's factual findings and credibility determinations were supported by the weight of the evidence. Therefore, we affirm the ALJ's findings that Gimbel committed several violations of the Commodity Exchange Act in early 1980.

### III.

■ Petitioner's second argument on appeal is that the Commission abused its dis-

---

1. Petitioner also attacks the reliability of a chart introduced in conjunction with Utrata's testimony. The chart was prepared by Getson and purported to show that Getson had made several trades for Gimbel in early 1980. At the hearing, conflicting expert testimony about the accuracy of this chart was given. We find that the ALJ did not err by crediting the testimony of the Division's expert witness.

cretion by denying him a separate hearing on the issue of sanctions. As noted above, the Commission at the end of its case in chief, introduced evidence of Gimbel's extensive history of trading abuses. In contrast, Gimbel introduced no evidence in mitigation of possible sanctions during the hearing. Petitioner raises but does not press the argument that he was entitled to a separate hearing on sanctions under the Due Process Clause, the Commodity Exchange Act, and the Commission's own precedents. We disagree.

Under the Due Process Clause, an individual faced with the possible deprivation of a property interest is entitled to both timely and adequate notice of the potential deprivation and a meaningful opportunity to be heard. *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970). Petitioner was afforded both in the present case. The complaint clearly notified Gimbel of both the charges against him and the sanctions that were sought and petitioner had the opportunity to adduce evidence in mitigation of punishment at the hearing.

We are also unable to conclude that the Commodity Exchange Act provides for a separate hearing on sanctions. The Act provides in pertinent part:

If the Commission has reason to believe that any person ... has willfully made any false or misleading statement of a material fact in any registration application or any report filed with the Commission under this Act or willfully omitted to state in any such application or report any material fact which is required to be stated therein ... it may serve upon such person a complaint stating its charges in that respect which complaint shall have attached or shall contain therein a notice

of hearing.... Said hearing may be held ... before the Commission, or before an Administrative Law Judge designated by the Commission, which Administrative Law Judge shall cause all evidence to be reduced to writing and forthwith transmit the same to the Commission.

7 U.S.C. § 9. The statute, while providing for a hearing at which evidence is to be received, does not distinguish between evidence bearing on the issue of liability and evidence bearing on the issue of appropriate sanctions. Consequently, we cannot conclude that the Act provides a defendant with the right to a separate hearing on punishment.

Petitioner also argues that he was entitled to a separate hearing on sanctions under the Commission's own precedents. In response, the Commission contends that the decision as to whether or not to hold a separate hearing on sanctions rests solely with the ALJ. The Commission acknowledges that it has recommended that ALJ's conduct a separate hearing on sanctions in appropriate cases but claims that this recommendation only applies when civil monetary penalties are at issue. *See In Re Rothlin,* [1982–84] Comm.Fut.L.Rep. (CCH) ¶ 21,851 (CFTC 1984). The Commission's monetary/non-monetary distinction is somewhat puzzling given the fact that the determination of an appropriate non-monetary penalty is often a more difficult and protracted process than the determination of an appropriate monetary penalty. Nevertheless, after examining the relevant Commission decisions, we are unable to conclude that Gimbel was entitled to a separate hearing on sanctions under Commission precedents.[2]

Gimbel also contends that the ALJ misled him into believing that there would be a

---

**2.** In *In re Antonacci,* [1986–1987 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 23,038 (CFTC 1986), the Commission vacated the sanctions imposed by the ALJ and remanded for a separate hearing on punishment. In *Antonacci,* however, unlike this case, the ALJ had failed to hold any hearing at all.

separate hearing on sanctions after an initial determination of liability. Petitioner concedes that he did not make a formal motion for bifurcation but claims to have done so "in substance." After reviewing the record, however, we cannot conclude that the ALJ ever represented that a separate hearing on sanctions would be held. In fact, the ALJ routinely admitted evidence of Gimbel's prior disciplinary violations, evidence that supported the Division's request for a permanent trading ban. Under these circumstances we cannot conclude that the Commission abused its discretion by failing to order a separate hearing on sanctions. Consequently, we affirm the non-monetary penalties assessed against petitioner.

### IV.

 Finally, petitioner challenges the Commission's imposition of a civil monetary penalty. As noted above, the ALJ, without explanation, declined to impose any monetary penalty. The Commission reversed this aspect of the ALJ's decision and assessed a $115,000 fine against Gimbel.

Under Commission precedent, imposition of monetary sanctions is contingent upon the development of a satisfactory record on the collectibility of the proposed penalty. *See In the Matter of Nelson Ghun & Associates*, [1984–1986 Transfer Binder] Comm. Fut.L.Rep. (CCH) ¶ 22,584 (CFTC 1985) at 30,526. Collectibility is defined as assets sufficient to satisfy the monetary penalty the Division is seeking. *Id.* at n.3. Under *Nelson Ghun*, the Division of Enforcement bears the burden of proof on the issue of collectibility.

In our view, the Division failed to develop a satisfactory record on the collectibility of the proposed penalty. The Division did not introduce any evidence on the issue at the hearing and the record is devoid of information about Gimbel's assets in 1985. The only evidence in the record relevant to the issue of collectibility is a 1981 financial statement introduced by Gimbel to rebut

the charges that he controlled trades in other accounts. This statement revealed petitioner's net worth to be approximately $3,000,000 at that time.[3] In our view, this dated information does not constitute a satisfactory record on Gimbel's assets in 1985. Consequently, we find that the Division failed to meet its burden of establishing the collectibility of the proposed penalty at the hearing.

In sum, we find that Gimbel was not entitled to a separate hearing on sanctions under the Due Process Clause, the Commodity Exchange Act and the Commission's own precedents. In addition, we are unable to conclude that the ALJ misled petitioner's counsel into believing that there would be a separate hearing on sanctions in this case. Consequently, we affirm the Commission's imposition of a permanent trading ban and revocation of petitioner's registration as a floor broker. We find, however, that the Division failed to satisfy its burden of establishing the collectibility of the proposed penalty at the hearing. Consequently, we reverse the Commission's imposition of a civil monetary penalty.

### V.

We affirm the Commission's liability determinations and imposition of non-monetary sanctions but reverse its imposition of a civil monetary penalty. Therefore, the Commission's decision is

AFFIRMED IN PART AND REVERSED IN PART.

---

**3.** It is true that the Division's attorney attempted to compel the introduction of more recent financial documents at the hearing. The ALJ inexplicably agreed to defer a decision on their admission until the last day of the hearing then failed to rule on the matter. The Division's attorney, however, acquiesced in the closing of the record in its present state.