# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-3722

STEVEN C. BRENNER and JAMI WEISNER BRENNER,

*Petitioners,*

*v.*

COMMODITY FUTURES TRADING COMMISSION,

*Respondent.*

———————

Petition for Review of an Order of the
Commodity Futures Trading Commission
No. 00-08.

———————

ARGUED MAY 12, 2003—DECIDED JULY 30, 2003

———————

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Steven Brenner and his wife Jami Weisner Brenner[1] petition this Court to review the decision of the Commodity Futures Trading Commission (the "Commission") finding them liable for violations of the Commodity Exchange Act (the "Act") and imposing sanctions

———————

[1] Both the Administrative Law Judge's and the Commission's opinions refer to Steven Brenner as "Brenner" and Jami Weisner Brenner as "Weisner." For the convenience of the reader, we will continue to refer to the petitioners in this manner.

pursuant to those liability determinations. The petitioners argue that there was insufficient evidence to support the entry of summary disposition against them, and that even had there been enough evidence, the Commission erred in imposing sanctions in the amount and manner it did. For the following reasons, we reject the petitioners' appeal and affirm the decision of the Commission on both the findings of liability and the imposition of sanctions.

## HISTORY

Steven Brenner is no stranger to the legal process surrounding the trading of commodity futures. The legal quagmire in which the Brenners find themselves today began back in 1986, when Brenner was ordered by the Commission to pay damages for churning a customer's account. *Wagner v. Commonwealth Commodities Corp.*, CFTC Docket No. 85-R91, 1986 CFTC LEXIS 19, at *6 (ALJ Dec. 19, 1986). When he failed to satisfy that judgment against him, the Commission placed him on its Sanctions in Effect List. *See In re Brenner*, CFTC Docket No. 90-7, 1990 CFTC LEXIS 143, at *1-2 (CFTC Mar. 27, 1990). Once added to that list, Brenner was automatically barred from trading on any markets regulated by the Commission. *See* 7 U.S.C. §18(f) (2003).

The automatic trading ban, however, did not deter Brenner. Despite receiving notice of his placement on the sanctions list and the resulting automatic trading ban, Brenner continued to trade on domestic futures markets through several futures commission merchants ("FCMs"). In March 1990, the Commission was forced to bring another complaint against Brenner for violating the trading ban. *In re Brenner*, 1990 CFTC LEXIS 143, at *3-4. Brenner failed to answer the complaint, and an Administrative Law Judge ("ALJ") held him in default and imposed sanctions including

a cease-and-desist order, a 10-year trading ban, and a $10,000 civil monetary penalty. *In re Brenner*, CFTC Docket No. 90-7, 1990 CFTC LEXIS 380 (ALJ Aug. 16, 1990).

Still not deterred, Brenner opened an account in 1992 under his wife's name and, posing as her, traded on Commission-regulated markets. In July 1992, the Commission filed an action in the United States District Court for the Northern District of Illinois, alleging that Brenner used a fictitious name to trade futures contracts in violation of the 1990 trading ban. On July 7, 1992, the district court entered an order of permanent injunction against Brenner. *See In re Brenner*, CFTC Docket No. 90-7, 1995 CFTC LEXIS 293, at *4 (CFTC Nov. 15, 1995). Over the next two years, Brenner continued trading in violation of the court order, and the U.S. Department of Justice pursued criminal prosecution of Brenner under 18 U.S.C. § 401 for disobeying a lawful order of a court. *See In re Brenner*, CFTC Docket No. 00-08, 2002 CFTC LEXIS 137, at *4 (CFTC Oct. 2, 2002). In December 1996, Brenner pleaded guilty to trading in violation of the injunction and was sentenced to weekend detention for one month and two years probation. *Id.* at *4-5.

On March 30, 2000, the Commission issued yet another complaint against Brenner—the complaint giving rise to this appeal—alleging that from January 1995 through October 1999, Brenner violated Section 8b of the Act by trading on Commission-regulated markets in violation of the Commission's 1990 order imposing the ten-year trading ban.[2] The complaint additionally alleged that Weisner

---

[2] Section 8b provides: "It shall be unlawful for any person, against whom there is outstanding any order of the Commission prohibiting him from trading on or subject to the rules of any registered entity, to make or cause to be made in contravention of such order, any contract for future delivery of any commodity, on
(continued...)

willfully aided and abetted Brenner's illegal trading, thus incurring her own liability pursuant to Section 13(a) of the Act.[3] By May 2000, neither Brenner nor Weisner had responded to the complaint (having instead filed a motion to dismiss and a motion for a more definite statement), and the ALJ hearing the case ordered them to show cause why a default judgment should not be entered against them.

Rather than answer, Brenner and Weisner asserted three privileges as the basis for refusing to admit or deny the allegations in the Commission's complaint: (1) the Fifth Amendment privilege against self-incrimination; (2) the privilege against "adverse spousal testimony"; and (3) the privilege protecting confidential marital communications. The Commission's Division of Enforcement (the "Division") later served Brenner and Weisner with separate requests for admissions, but both asserted the same privileges as the basis for refusing to respond.

In October 2000, the Division moved for summary disposition, pursuant to Commission Rule 10.91,[4] arguing

---

[2]  (...continued)
or subject to the rules of any registered entity." 7 U.S.C. § 12b (2003).

[3]  Section 13(a) provides: "Any person who . . . willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of this Act, or any of the rules, regulations, or orders issued pursuant to this Act . . . may be held responsible for such violation as a principal." 7 U.S.C. § 13c(a) (2003).

[4]  A motion for summary disposition under Commission Rule 10.91 is similar to a motion for summary judgment under Federal Rule of Civil Procedure 56. Rule 10.91 provides that summary disposition shall be granted "if the undisputed pleaded facts, affidavits, other verified statements, admissions, stipulations, and depositions, and matters of official notice show that (1) there is no
(continued...)

that it had presented undisputed facts establishing that while Brenner was subject to the Commission's 1990 trading ban, he repeatedly traded futures on markets regulated by the Commission, using accounts opened under various assumed names, including that of his wife. The Division further argued that the undisputed facts demonstrated that Weisner knowingly assisted her husband in opening such accounts and in allowing him to trade under her name.

In support of its motion for summary disposition, the Division offered documents from the accounts allegedly traded by Brenner, deposition testimony, and sworn statements from individuals who identified Brenner as the individual who traded certain accounts. The Division also drew adverse inferences from the petitioners' failure to answer the allegations in the complaint or to respond to the requests for admissions by asserting various privileges. The Division asserted that its evidence demonstrated that Brenner had traded an account opened under the name Ronald Boylan at First Commercial Financial Group, Inc. (the "Boylan Account"), and an account opened under his wife's name at Peregrine Financial Group (the "Weisner-Peregrine Account"), just eight days after the Boylan Ac-

---

[4] (...continued)

genuine issue as to any material fact, (2) there is no necessity that further facts be developed in the record, and (3) such party is entitled to a decision as a matter of law." 17 C.F.R. § 10.91(e) (2003). *See also In re Zuccarelli*, CFTC Docket No. SD 97-3, 1999 CFTC LEXIS 105, at *9 (CFTC May 24, 1999) ("The Commission's summary disposition procedures are patterned after and closely track the summary judgment procedures of Federal Rule of Civil Procedure 56.").

count was closed.[5] The Division also identified four other accounts opened in Weisner's name, which it alleged were actually traded by Brenner.[6]

Brenner and Weisner filed a joint opposition to the Division's motion, as well as their own motion for summary disposition. They argued that the Division had failed to present sufficient evidence to establish that Brenner had violated the Commission's trading ban. They suggested that the Division's evidence could be read to suggest that Brenner at most used the accounts at issue to trade on foreign commodities markets, those not regulated by the Commission and thus outside the scope of its ban, and that only Weisner used the accounts to trade in the regulated domestic markets. Brenner and Weisner also objected to the Division drawing adverse inferences from the assertion of their Fifth Amendment privilege.

In March 2001, the ALJ issued his decision on the cross-motions for summary disposition, finding liability on the part of both Brenner and Weisner and imposing sanctions pursuant to the liability determinations. The ALJ found that the testimony, declarations, and affidavits of the various witnesses, together with the failure of the petitioners to respond to the Division's discovery requests, "establish[ed] conclusively that there is no genuine issue as to any material fact." *In re Brenner*, CFTC Docket No. 00-08, 2001 CFTC LEXIS 40, at *3 (ALJ Apr. 2, 2001). The

---

[5]  While the Boylan Account was still open, Peregrine Financial Group became the successor in interest to the First Commercial Financial Group.

[6]  In May 1995, an account in Weisner's name was opened at LFG, LLC (the "LFG Account"); in April 1997, two accounts in Weisner's name were opened at Spike Trading Company (collectively, the "Spike Account"); and in December 1997, another account in Weisner's name was opened at ED&F Man (the "Man Account").

ALJ first noted that both marital privileges, as well as the Fifth Amendment privilege against self-incrimination, are only available in criminal proceedings. *Id.* at *5-6 (citing, *inter alia*, *Ryan v. Commissioner*, 568 F.2d 531, 543 (7th Cir. 1977)). As for the petitioners' claim that the Division's undisputed factual assertions fit an innocent scenario, the ALJ rejected that argument as "an unsupported theoretical possibility" insufficient to defeat summary disposition. *Id.* at *7.

Finding that the Division had presented evidence sufficient to establish liability, and that neither Brenner nor Weisner had raised an issue of material fact as to the Division's allegations, the ALJ made forty-nine findings of fact and six conclusions of law, ultimately holding that Brenner violated Section 8b of the Act and that Weisner aided and abetted his actions, making her liable under Section 13(a). Summary disposition was entered against Brenner with respect to the Boylan Account, the Weisner-Spike Account, and the LFG Account, and against Weisner with respect to the Spike and LFG Accounts. Brenner and Weisner's cross-motion was denied. The ALJ then imposed sanctions on both parties, including cease-and-desist orders against both Brenner and Weisner and a civil monetary penalty of $100,000 against Brenner.

Both the Division and the petitioners appealed the decision to the full Commission. Brenner and Weisner claimed that the record did not support the ALJ's liability findings (specifically, that the Division had not rebutted the proffered innocent explanation for its factual assertions), that the ALJ had erroneously ruled that they could not assert their Fifth Amendment privilege in an administrative proceeding, and that the Division withheld exculpatory evidence. The Division argued that the sanctions imposed by the ALJ were inadequate given the nature of the violations.

In reviewing the ALJ's initial decision, the Commission first affirmed the liability determination. After noting that the ALJ's decision was "difficult to interpret," the Commission stated that it was limiting its review to those allegations that were "reliably resolved without a hearing"—that is, those issues appropriate for summary disposition. *In re Brenner*, 2002 CFTC LEXIS 137, at *14-15. It dismissed the remaining charges and vacated the ALJ's liability findings with respect to those allegations. *Id.* at *28. The Commission began its analysis of the remaining claims by noting that drawing adverse inferences from the invocation of one's Fifth Amendment privilege cannot by itself support a finding of liability. It acknowledged, however, that in appropriate circumstances, such as when viewed in combination with other evidence, "[i]t is permissible to rely on an adverse inference when respondent's silence is only one of a number of factors and is given no more weight than is warranted by the record." *Id.* at *18. The Commission went on to review the evidence offered by the Division, as well as the arguments made by Brenner and Weisner in opposition, and then affirmed the liability determinations against Brenner with respect to the Boylan Account, the Spike Account, and the LFG Account, and against Weisner with respect to the LFG Account. *Id.* at *27-28.

The Commission then addressed the sanctions imposed by the ALJ. In addition to affirming the cease-and-desist orders, the Commission felt it necessary to impose a lifetime trading ban on Brenner. Finally, the Commission, noting the severity of the violations and its intention to deter future violations, imposed a $300,000 civil monetary penalty on Brenner and a $100,000 civil monetary penalty on Weisner. Brenner and Weisner timely petitioned this Court for review of the Commission's opinion and order.

## ANALYSIS

Our jurisdiction to review the order from the Commission derives from Section 6(c) of the Act, which provides in part that the federal courts of appeals "shall have jurisdiction to affirm, to set aside, or modify the order of the Commission, and the findings of the Commission as to the facts, if supported by the weight of evidence, shall in like manner be conclusive." 7 U.S.C. § 9 (2003). In reviewing an order of the Commission, two standards of review are employed by this Court: "If the question presented is of the sort that courts commonly encounter, *de novo* review is proper. On the other hand, if the Commission's decision was peculiarly within its area of expertise, we apply a deferential standard and will affirm so long as the decision is reasonable." *Elliot v. CFTC*, 202 F.3d 926, 932 (7th Cir. 2000) (quotation and citations omitted). As the issues in this case—the sufficiency of the evidence offered to support summary disposition, the existence of appellate jurisdiction, and the appropriateness of sanctions—are generally familiar to this Court, we will employ a *de novo* standard of review.

### A. *Liability Determination*

Petitioners' first claim in this appeal is that there was insufficient evidence presented by the Division to support the entry of summary disposition against them as to liability under Sections 8b and 13(a) of the Act. They devote a significant portion of their briefs to arguing that liability must be supported by more than "suspicious circumstances suggesting the mere possibility of knowing wrongdoing" and that "suspicion, imagination, guess work, speculation, and conjecture cannot do the duty of proof." (Pet. Br. at 9-10.) No one disagrees with that proposition. The problem for Brenner and Weisner is that the Division has alleged more than just suspicious circumstances, speculation, or conjecture—the record indicates that the Division has offered

evidence sufficient to support the Commission's findings of liability at the summary disposition stage.

We first note that Brenner admits to violating Section 8b of the Act with respect to the Boylan account. *See* Pet. Br. at 10 n.3 ("Brenner's admission regarding that account warrants a summary disposition on that account. . . ."). That admission by itself is sufficient to support the Commission's finding of liability as to Brenner.

As for the Spike Account, the Division presented sufficient evidence to support the determination that Brenner traded on domestic markets using that account. The Division's evidence established that in April 1997, an account was opened at Spike Trading in Weisner's name, with her signature on account documents. The Division presented trading records which established that this account was used to trade on domestic markets regulated by the Commission. Finally, the Division offered the testimony of two Spike employees who tied Brenner to the Spike Account. We believe that this evidence was sufficient to support the Commission's finding that Brenner traded on domestic markets through this account.

With respect to the LFG Account, the Division offered uncontroverted evidence that an account at LFG was opened in Weisner's name in May 1995, and that the account was used to trade on domestic futures markets. The Division offered the testimony of LFG employee Luigi Auriemma, who testified that he believed Brenner traded on this account. The Commission found that this evidence, considered in combination with petitioners' refusal to respond to the evidence by asserting various privileges, was sufficient to establish liability. Once again, neither Brenner nor Weisner have pointed to any factual issue with respect to this evidence.

The evidence was also sufficient to establish that Weisner knew that Brenner was prohibited from trading on Com-

mission-regulated futures markets and yet still assisted her husband in trading in violation of that prohibition. Specifically, the Commission presented the testimony of LFG employee Auriemma, who stated that, based on his contacts with both Brenner and Weisner, he believed Weisner was aware that Brenner was trading on her account.

Once the Division had presented evidence to establish liability, the burden fell to the petitioners to come forward with their own evidence creating some factual dispute. "The party opposing summary disposition may not rely on mere allegations, or some metaphysical doubt as to the material facts, but must *come forward* with sufficient evidence to demonstrate a genuine dispute of material fact." *See In re Staryk*, CFTC Docket No. 95-5, 1997 CFTC LEXIS 294, at *21 (CFTC, Dec. 18, 1997) (citations and quotations omitted) (emphasis added). The petitioners have failed to offer any evidence that would create an issue as to the validity of the Division's case. Their response amounts to little more than calling attention to potential weak points in the Division's proof, coupled with their own speculation as to why it should not be believed or what innocent explanation it could support. But a party opposing summary judgment must do more than simply point to weaknesses in the movant's case or raise some "metaphysical doubt" as to the evidence offered—the non-movant must affirmatively raise an issue of material fact.

Though we take the evidence in a light most favorable to the petitioners, we believe that the evidence offered by the Division, combined with the petitioners' failure to respond to that evidence by invoking various privileges, *see Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993) ("'[T]he Fifth Amendment does not forbid inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318

(1976))), is sufficient to support the findings of liability made by the Commission. The petitioners failed to raise any issue of material fact with respect to this evidence; therefore, summary disposition on the issue of liability was appropriate.

### B. *Jurisdiction over the Appeal of the Sanctions Order*

Brenner and Weisner next argue that neither the Commission nor this Court had jurisdiction to hear the Division's appeal of the ALJ's sanction order, due to the Division's failure to file an effective notice of appeal. Our analysis of this argument requires a brief recounting of the timing of events following the ALJ's issuance of his initial decision. The ALJ issued that initial decision on March 30, 2001, but on April 2, 2001, issued an order of correction modifying the initial decision. Both the petitioners and the Division filed notices of appeal on April 16, 2001—as noted above, the petitioners sought review of the ALJ's liability determination, while the Division challenged the adequacy of the sanctions imposed. In addition to its notice of appeal, the Division filed a motion for clarification of the ALJ's opinion and a motion to stay the appellate proceedings and remand to the ALJ to allow for the resolution of the motion for clarification. On April 17, 2001, before the full Commission had acted on the Division's motion to stay the appellate proceedings and before the petitioners responded to the Division's motions, the ALJ apparently granted the motion to clarify offered by the Division, once again modifying its decision.

Petitioners contend that the Division's April 16th notice of appeal was ineffective to establish the Commission's jurisdiction over the Division's claims for two reasons. First, they argue that the actual date of final disposition for determining the timeliness of an appeal was April 17, 2001

(the date on which the ALJ made the final modification to the initial decision) rather than March 30, 2001 (the date the ALJ originally issued the initial decision) or April 2, 2001 (the date the ALJ *sua sponte* corrected his initial decision). *See* 17 C.F.R. § 10.102(a) (2003) (providing that a party may appeal "an initial decision or a dismissal or other *final* disposition of the proceeding by the Administrative Law Judge as to any party" (emphasis added)). Brenner and Weisner argue that because the Division filed its notice of appeal on April 16th and then failed to file a new notice of appeal after the final modified opinion was entered on April 17th, the ALJ's initial decision became final with respect to the Division's claims. *See* 17 C.F.R. § 10.84(c) (2003).

Second, Brenner and Weisner argue that when the ALJ granted the Division's motion for clarification on April 17th, it mooted the previously filed notices of appeal, necessitating the filing of new notices—if a party still wished to pursue an appeal. The petitioners note that they filed a new notice of appeal on May 2, 2001, while the Division never did (they suggest that the Division was satisfied with the results of its motion for clarification and thus saw no need to appeal the ALJ's decision to the full Commission). Therefore, petitioners argue, the Division's arguments on appeal should not have been considered by the Commission.

We disagree that the Commission lacked jurisdiction over the Division's appeal. First, we note that the modification to the initial decision issued by the ALJ on April 17th included no substantive changes in either the factual findings or legal conclusions; rather, the modification was limited to obvious errors in citations to statutory and regulatory provisions. Such a modification is more in the nature of a clerical correction permitted under Federal Rule of Civil Procedure 60, which provides district courts with the authority to correct clerical mistakes in judgments and orders, even during the pendency of an appeal. *See* FED. R. CIV. P. 60(a) (2003). Such modifications do not restart the

clock on the timeliness of an appeal. *See Local 1545 v. Inland Steel Coal. Co.*, 876 F.2d 1288, 1292 n.4 (7th Cir. 1989) ("The entry of an order correcting a clerical mistake pursuant to Rule 60(a) does not start the time for appeal running again." (citations omitted)).

In addition, we are inclined to treat the appeal of an ALJ's initial decision to the full Commission just as we would an appeal from a district court to a circuit court. In both cases, the filing of a notice of appeal divests the lower court of jurisdiction and shifts control over the issues on appeal to the appellate court. *See Grube v. Lau Indus., Inc.*, 257 F.3d 723, 731 (7th Cir. 2001) (quoting *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) ("[T]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.")). Given that, once the Division filed its notice of appeal, jurisdiction automatically vested in the Commission to consider the sanctions issue raised by the Division. Thus, even if we were to consider the ALJ's April 17th modification as anything other than a clerical correction, the ALJ would have been without jurisdiction to change his decision and his action would have been invalid.

Finally, we note that any party may appeal a decision by an ALJ to the Commission. *See* 17 C.F.R. § 10.102(a) (2003). And once an appeal has been taken, the Commission has broad powers to review the initial decision. *See* 17 C.F.R. § 10.104(b) (2003) ("On review, the Commission may affirm, reverse, modify, set aside or remand for further proceedings, in whole or in part, the initial decision by the Administrative Law Judge and make any findings or conclusions which in its judgment are proper based on the record in the proceeding."). Brenner and Weisner acknowledge that they followed the dictates of Rule 10.102 and filed an effective notice of appeal on May 2, 2001. Even assuming that the

Division's failure to re-file its notice thereby deprived the Commission of jurisdiction over its appeal, the petitioners' appeal properly put the ALJ's initial decision before the Commission. Given the Commission's broad authority once an appeal is before it, consideration of the adequacy of the sanctions imposed by the ALJ was proper.

### C. *The Sanctions Order*

Finally, Brenner and Weisner contest the imposition of the civil monetary penalties against them. They argue that the Commission abused its discretion by imposing increased sanctions, greater than those initially imposed by the ALJ, without first conducting a hearing regarding the petitioners' financial worth and the collectibility of any financial penalty. "With regard to the agency's imposition of sanctions, the choice of sanction [is] not to be overturned unless the Court of Appeals might find it unwarranted in law or . . . without justification in fact . . . . If the agency's sanction falls within the statutory limits, it must be upheld unless it reflects an abuse of discretion." *LaCrosse v. CFTC*, 137 F.3d 925, 929 (7th Cir. 1998) (quotations and citations omitted).

The Act authorizes the Commission to impose civil money penalties for each violation of the Act established by the record. 7 U.S.C. § 9 (2003). After reviewing the sanctions imposed by the ALJ, the Commission increased the penalty assessed against Brenner from $100,000 to $300,000 and imposed a civil monetary penalty against Weisner in the amount of $100,000. In reaching its decision to increase the sanctions, the Commission took into account the ALJ's assessment of the gravity of the violations at issue, as well as the sanctions he initially imposed, *see In re Brenner*, 2002 CFTC LEXIS 137, at \*24-25, but correctly noted that it had the authority to impose whatever sanctions it deemed appropriate based on its *de novo* review of the record. *See In re Grossfeld*, CFTC Docket No. 89-23, 1996 CFTC LEXIS

242, *39-40 (CFTC Dec. 10, 1996) ("[W]e wish to make it clear that in this case and in the future we will determine sanctions *de novo* rather than defer to the assessment of Commission ALJs."). Petitioners complain that it was an abuse of discretion for the Commission to impose such an increase without first holding a hearing on the issue.

In formulating the total amount of the monetary penalty to be imposed, if any, the Commission is directed by the Act to "consider the appropriateness of such penalty to the gravity of the violation." 7 U.S.C. § 9a(1) (2003). The Act does not require that a separate hearing be held at the sanctions stage of adjudication. In fact, in *Gimbel v. CFTC*, 872 F.2d 196, 200 (7th Cir. 1989), we held that neither the Constitution, nor the Commodity Exchange Act, nor the Commission's own decisions require that a defendant be afforded a separate hearing on sanctions apart from a hearing on liability.

Brenner and Weisner, however, direct our attention to another portion of our decision in *Gimbel*, which, they argue, requires the Commission to develop a satisfactory record on the issue of the collectibility of a proposed sanction before it actually imposes one. *Id.* at 201. In that case, we reversed the imposition of the monetary penalty because of the failure to develop the record on the issue of collectibility. *Id.* But the petitioners here fail to note that in 1992 Congress enacted several amendments to the Act, including a change in the criteria to be considered before imposing any financial penalty. *See In re Nikkhah*, CFTC Docket No. 95-13, 2003 CFTC LEXIS 45, at *3 n.2 (CFTC Sept. 26, 2000) (noting that the Futures Trading Practices Act of 1992 altered the list of factors to be considered in determining the appropriate amount of any civil penalty). Under the new provisions of the Act, the Commission is to set an appropriate sanction based on the "gravity of the violation"—the financial worth of the defendant or the collectibility of any fine are no longer relevant consider-

ations. *See* 7 U.S.C. § 9a (2003). Because the wrongdoing at issue in this case occurred after the effective date of the amendment, no consideration of collectibility was necessary.

In this case, the Commission engaged in a thoughtful consideration of the gravity of Brenner and Weisner's offenses, s*ee In re Brenner*, 2002 CFTC LEXIS 137, at *24-27, concluding that "[l]ower, incremental sanctions have proved completely ineffective at deterring additional violations by Brenner. Consequently, especially severe sanctions are appropriate.*" Id.* at *26-27. Considering the nature of the violations at issue here, the petitioners' long history of flouting the Commission's authority, and the apparent unwillingness to reform their conduct (one need only review the history section of this opinion to see how ineffective previous sanctions were), the Commission did not abuse its discretion in imposing the civil monetary penalties that it did.

## CONCLUSION

For the foregoing reasons, the Commission's liability determinations and the sanctions imposed on Brenner and Weisner are AFFIRMED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*