Linda S. ALLEN, Plaintiff–Appellant,

v.

John E. POTTER, Postmaster General,* Defendant–Appellee.

No. 03–3618.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 2004.

Decided Sept. 8, 2004.

---

* Ms. Allen has brought the present action against the former and current Postmasters General only in their official capacity, i.e., against the United States Postal Service ("USPS"). Because the former Postmasters General no longer represent the USPS in any capacity, we have removed their names from the caption of the case.

Donald R. Jackson, Stephen J. Thomas, Peoria, IL, for Plaintiff–Appellant.

Gerard A. Brost, Office of the United States Attorney, Peoria, IL, for Defendants–Appellees.

Before EASTERBROOK, RIPPLE, and WOOD, Circuit Judges.

### ORDER

Linda S. Allen appeals the district court's dismissal of her action alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* For the reasons set forth in the following order, we affirm the judgment of the district court.

### A.

Ms. Allen is an African–American employee of the United States Postal Service. Over the course of her twenty-eight years of employment with the Postal Service, Ms. Allen has filed at least twenty-six EEO charges. On September 1, 1998, Ms. Allen filed her original complaint in this action; attached to this complaint was a Final Agency Decision ("FAD") dated April 6, 1998, which terminated the investigation of EEO charge 4–L–000–1428–92.

In response to the complaint, the Postal Service, through interrogatories, requested Ms. Allen to identify the specific allegations of discrimination. She responded by listing various incidents ranging in time from 1976 to the time this action was filed. She asserted over 130 claims.

The Postal Service filed a motion requesting that the district court grant summary judgment or limit the issues for discovery. *See* R.28. It took the position that many of the allegations were either part of a past EEO complaint, and therefore not part of the underlying charge in this case, or were allegations that had not been made in any EEO complaint. The district court permitted Ms. Allen to file an amended complaint.

In her amended complaint, filed in September 2001, Ms. Allen added an August 6, 2001 FAD based on EEO charge 1–J–626–0006–00 ("2000 EEO charge or complaint"). This amended complaint alleged racial discrimination, retaliation, harassment and a hostile work environment from May 1991 and continuing throughout her employment. The Postal Service responded with a motion for partial summary judgment or partial dismissal, claiming

that many allegations were not properly exhausted. The district court granted the motion. In doing so, the court limited the eligible claims to "the incidents set forth in the 1998 and 2000 FAD and to other incidents occurring and to other reasonably related incidents during that same time period." R.42 at 3.

Ms. Allen filed a second amended complaint that mirrored the first amended complaint; the Postal Service again moved for partial summary judgment on the same basis. The court agreed and held that Ms. Allen had failed to exhaust any claim for a hostile work environment and only could raise retaliation charges that were included in the two EEO charges before the court. With regard to the hostile environment claim, the court concluded that neither her complaint nor her detailed, lengthy affidavits supported a hostile environment claim despite her use of the term at one point. Addressing the retaliation claim, the court concluded that retaliation claims based on events that preceded the EEO charge were barred if not included in the charge and any retaliation that occurred after the EEO charge was subject to the exhaustion requirements. Accordingly, the court instructed Ms. Allen to file a third amended complaint that did not include a hostile work claim and that was limited to the retaliation claims "that were specifically included in plaintiff's administrative actions." R.51 at 6.

Ms. Allen filed a third amended complaint that complied with the court's instructions. The Postal Service again moved for summary judgment. After considering the merits of Ms. Allen's claims, the court granted the motion.

### B.

Ms. Allen claims that the district court erroneously limited the claims that she could present to the court. As noted above, although Ms. Allen has filed numerous EEO charges over the course of her employment, only two form the basis of the current action: the 1992 charge, 4–L–000–1428–92,[1] and the 2000 charge, 1–J–626–0006–00.[2] We therefore must determine whether the retaliation and hostile environment claims that Ms. Allen wishes us to consider are within the scope of these charges. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989) (noting that the scope of the EEOC charge limits the scope of the subsequent complaint). We have stated that:

To answer this question we ask "what EEOC investigation could reasonably be expected to grow from the original complaint?" *Novitsky v. American Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir.1999) (quotation omitted). "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge."

1. The 1998 FAD itself addressed several EEO charges. One charge that is included without question in the 1998 FAD is EEO charge 4–L–000–1428–92. Ms. Allen asserts that 4–L–000–1076–91 was consolidated with 4–L–000–1428–92. Although the procedural history of these charges is, to put it mildly, tortuous, we shall assume, as did the district court, that these two charges were consolidated.

2. EEO charge 1–J–626–0006–00 is also a consolidation of administrative charges 1–J–626–0007–00 and 1–J–626–008–00. *See* Appellee's Br. at 6 n. 2; R.38, Ex.2. However, the plaintiff only includes and addresses allegations made in 1–J–626–0006–00.

*Ajayi v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 527 (7th Cir.2003) (quoting *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir.1994)). In sum, the complaint must describe the same conduct and implicate the same individuals. *See Cheek,* 31 F.3d at 501.[3]

■ With respect to her retaliation claims, the Postal Service asserts that Ms. Allen failed to develop on appeal her argument that the district court erroneously excluded some of her claims, and, therefore, that argument is waived. We believe that the Postal Service accurately has portrayed the situation. Ms. Allen puts forth no argument explaining which, if any, or in what way, her retaliation claims were improperly limited. She only makes the general assertion that "each and every allegation set forth in the District Court complaint in all three (3) counts were specifically included in the charges filed . . . with the EEO." Appellant's Br. at 28. Ms. Allen does not identify any retaliation claim that the district court failed to consider or that she was dissuaded from asserting. Moreover, the record does not suggest that the district court limited or failed to consider any of Ms. Allen's retaliation claims. Because Ms. Allen does not allege which, if any, retaliation claims were reasonably related to the 4–L–000–1428–92 or 1–J–626–0006–00 charge and yet excluded from the court's consideration, we must conclude that her retaliation claims were not impermissibly restricted in any way.

### C.

We address now the court's exclusion of Ms. Allen's hostile work environment claim.

### 1.

■ We first turn to her initial charge. To determine whether claims may be "'reasonably inferred from the facts alleged in the charge'" we must, of course, examine the allegations contained in each of the charges attached to the complaint: the 1992 charge, 4–L–000–1428–92, and the 2000 charge, 1–J–626–0006–00. *Ajayi,* 336 F.3d at 527 (quoting *Cheek,* 31 F.3d at 503). As an initial matter, it is questionable whether the subject matter of charge number 4–L–000–1428–92 is properly before this court. During the administrative processing of this charge, Ms. Allen withdrew "the issues of harassment . . . that were raised in case number 4–L–1428–92 because they [were] encompassed and part of case 4–L–1076–91." R.50, Ex.H. However, we shall assume, as did the district court, that the charges were consolidated and are properly part of the present litigation. Nevertheless, we must conclude that the charges fail to set forth acts that reasonably can be characterized as describing a hostile work environment.

We understand our obligation to read charitably the allegations of a charge. *See Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 (7th Cir.1985) ("The standard is a liberal one in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions."); *see also Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (en banc). Nevertheless, we also must keep in mind that the charge must give fair notice of the evidentiary bases for the charging party's claim—here that Ms. Allen endured conduct that was "so severe or pervasive as to

---

**3.** Any retaliation claim based on events occurring prior to her EEO charge should have been included in that charge; any claim based on events after her latest EEO charge may be considered if it is reasonably related to the charges filed. *See McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 482–83 (7th Cir.1996).

create an abusive working environment in violation of Title VII." *Russell v. Bd. of Trs. of Univ. of Illinois at Chicago,* 243 F.3d 336, 342–43 (7th Cir.2001).

The Supreme Court in *National Railroad Passenger Corp. v. Morgan,* has explained that

[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.

In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal citations omitted). Further, this circuit has explained that "[n]ot every unpleasant workplace is a hostile environment. The 'occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers' would be neither pervasive nor offensive enough to be actionable." *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1013 (7th Cir.1997) (quoting *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995)).

The actions forming the bases for this charge of discrimination are set forth in a thirteen-page affidavit filed on June 5, 1991. *See* R.49, Ex.A. Ms. Allen specifically set out and separately enumerated six detailed incidents; she described four instances when she was denied certain hours of annual leave for specific days and listed two instances when she was denied a private meeting with Manager Turner. After she lists these events, Ms. Allen lists the other employees to whom management granted annual leave. This description continues for several single-spaced pages in which she describes the appropriate procedures for annual leave that should have been used. Then she claims that a manager and co-worker may have committed criminal violations in filling out their annual leave forms. Finally, she mentions several "childish displays" by other co-workers, which she surmises may be an attempt to dissuade her from pointing out the unlawful and preferential treatment in granting annual leave. *Id.* at 9.

Scattered throughout these specifically described claims were descriptions of various encounters with her fellow employees. She named several employees who "began a campaign to shun and stop speaking" to her. *Id.* at 10. She said that this silence directed toward her was interrupted by "verbal harassment," *id., and* that one of Betty Jewell's friends engaged in "verbal harassment and acted with hostility" toward her after she had filed her EEO charge, *id.* at 12. Ms. Allen asserted that several employees "never speak" to her, which creates a "hostile work environment." *Id.*

We agree with the district court that Ms. Allen's description, fairly read, does not set out a claim of a hostile work environment as that term is employed in federal discrimination law. Even reading the EEO complaint in the light most favorable to Ms. Allen, the actions she offered cannot support a hostile environment claim. Many of the acts of which she complains are inconsequential and exceedingly minor. Indeed, even Ms. Allen describes her co-workers' actions as "petty childish displays." *Id.* at 9. We do not believe that these types of allegations would apprise an employer of anything more than bickering

860

among employees,[4] much less that Ms. Allen was being subjected to severe or pervasive discrimination that would form the basis of a hostile work environment claim.

## 2.

■ We next consider the 2000 EEO charge, but conclude that Ms. Allen has waived any hostile employment action claims based on this. Before us, she suggests that her 2000 charge alleged a hostile work environment by citing to her memorandum in opposition to partial dismissal that she submitted to the district court. *See* Appellant's Br. at 27. This memorandum mentioned case number 1–J–626–0006–00 in its heading relating to the hostile work environment claims but discussed hostile environment claims only with respect to the allegations in the 1991 and 1992 charges, case numbers 4–L–000–1076–91 and 4–L–000–1428–92. *See* R.49 at 2–5. Because Ms. Allen failed to make any contention before the district court that her 2000 charge included a hostile work environment claim, we must conclude that she has waived that assertion on appeal. *See Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir.2002) (noting that arguments not raised in the trial court are waived).

■ Even assuming we could reach the merits of her claim, the underlying charge does not set forth facts that support a hostile work environment claim: Ms. Allen's 2000 charge simply mentions specific denials of overtime and annual leave and states that she was subject to a hostile work environment when she was denied overtime pay. Although the denial of overtime may be an adverse employment action to support a claim of discrimination, a workplace has been considered hostile only when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Morgan,* 536 U.S. at 116 (citations omitted). We cannot tease such a situation out of these allegations.

## D.

We turn now to a review of the district court's dismissal on the merits of several of Ms. Allen's claims.

### 1. Denial of Leave

■ Ms. Allen claims, at most, seven instances of the denial of annual leave that constitute either racial discrimination or retaliation.[5] She claims that the Postal

---

4. For example, Ms. Allen recalls an incident in which she informed a supervisor that certain employees already had received overtime. When Betty Jewell commented with dissatisfaction that she wanted the overtime, Ms. Allen responded that she would not lie for others and that she also wanted the overtime, but it was not fair to take it when both already had received overtime that day. Ms. Allen then said to Jewell that the difference between the two individuals was that she (Ms. Allen) would not lie for someone. Ms. Allen stated that she tried to be honest and fair but Jewell "[did] not care as long as she gets what she wants." R.49, Ex.A at 10. Ms. Allen claims that Jewell refused to speak to her and is still angry. Ms. Allen then later attempted to use a mail "hamper." When Ms. Allen

asked if Jewell knew that she was using the hamper, Jewell responded by stating that she was not a courteous person. Jewell referred to their earlier conversation. Next, Jewell later referred to the fact that she would have had two more hours of overtime had Ms. Allen not "opened her big mouth." *Id.* Several more of these types of incidents are included in the remainder of Ms. Allen's EEO charge.

5. The Postal Service asserts that Ms. Allen has waived any claim of retaliation because she has failed to assert those claims on appeal. The Postal Service's contention has some merit. Ms. Allen states that she was a victim of race discrimination and retaliation. With respect to the retaliation claims, she attempts

Service denied four of her requests in 1991 and one in 1992. She identifies one instance in 1999 in which she was denied leave without pay. Finally, with respect to 2000, Ms. Allen claims she was denied annual leave for January 5th and 7th.

The record also reveals that the Postal Service permitted Ms. Allen to take 206.41 and 206.19 hours of leave for 1991 and 1992, respectively. Notably, she earned only 208 hours of annual leave each year. *See* R.74, Ex.C ¶¶ 7–8; Appellee's Br. at 10. In 1999, Ms. Allen also earned 208 hours of annual leave but actually used 240 hours. *See* R.74, Ex.C ¶ 10; Appellee's Br. at 54. In 2000, Ms. Allen earned 208 hours of annual leave and again used more than that amount, using 222.24 hours. *See* R.74, Ex.C ¶ 11.[6]

Given these facts, any denial of leave properly is characterized as a denial of the precise leave dates that Ms. Allen had requested and not a denial of the ability to use her allotted leave time. In each year, she was permitted to take at least the five weeks of annual leave to which she was entitled. In any one year, she alleges at most four instances when she could not take leave on the precise day that she requested. In the years 1992, 1999 and 2000, she alleged only one such denial in each year.

An adverse employment action is one that is materially adverse, " 'meaning more than a mere inconvenience or an alteration of job responsibilities.' " *Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir.2002) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993)). When the several denials of leave are considered in the context of Ms. Allen's entire leave record, the four denials in 1991 and the one denial in each of the other years (1992, 1999 and 2000) cannot be said to be anything more than "a mere inconvenience." *Crady*, 993 F.2d at 136; *see Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir.2004); *Campbell v. Henderson*, No. 00 C 6837, 2002 WL 1732361 (N.D.Ill. July 26, 2002); *Wilkosz v. Hudson Respiratory Care, Inc.*, 2000 WL 1705252, at *10 (N.D.Ill. Nov.14, 2000); *Rice v. Cent. DuPage Hosp.*, No. 96 C 2405, 1999 WL 199241, at *5 (N.D.Ill. Mar.31, 1999).[7]

to support her claims by comparison to the treatment of individuals who are not African–American. She does not make, however, similar comparisons to a similarly situated employee who had not engaged in protected activity and who was treated more favorably. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640 (7th Cir.2002). Such a comparison is a component of a retaliation claim. *See id.; see also Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 888 (7th Cir.2004). In addition to failing to make proper comparisons, her lengthy arguments on appeal discredit any contention that she advances retaliation claims rather than race discrimination. Ms. Allen mentions retaliation a few times, but, in most of those references, she uses the word as a synonym for race discrimination. *See* Appellant's Br. at 25 ("Allen sets forth no less than six incidents which she characterizes as retaliation for having filed the EEO claims that she had filed to that point. These allegations amount to allegations of disparate treatment based upon race." (record citations omitted)). We need not ground our decision on waiver, however, because, whether the claims are viewed as race discrimination or retaliation, they fail for the reasons as discussed in the text.

**6.** In addition to her annual leave, Ms. Allen also received sick leave. She earned 104 hours of sick leave in each of 1991 and 1992 and took 98.91 and 80 hours, respectively. *See* R.74, Ex.C ¶¶ 7–8. In 1999, she used 224.38 hours of sick leave under the Family Medical Leave Act ("FMLA") in addition to her annual leave. In 2000, she also earned 104 hours of sick leave, was eligible to receive 480 hours of FMLA sick leave, and actually used 453.09 hours of sick leave. *See* R.74, Ex.C ¶ 10.

**7.** Even if we could consider the occasional denials of leave as an adverse employment action, Ms. Allen does not offer similarly situ-

Finally, even if Ms. Allen could demonstrate a prima facie case, she cannot demonstrate that the reason offered for her denial was a pretext. Ms. Allen admits that the Postal Service denied her requests for leave by citing the needs of the Postal Service on the particular day that she had requested leave. The district court correctly concluded that "[i]n nearly every instance, there were work related demands that apparently explained the employer's decisions." R.89 at 18. The Postal Service's reasons were supported by testimony regarding the projected high mail volume and anticipated staffing levels each day. That some projections turned out to be inaccurate does not demonstrate that the Postal Service's reason was a lie.

### 2. Overtime [8]

Ms. Allen also alleges discrimination and retaliation based on the Postal Service's failure to award overtime to her. In order to work voluntary overtime, postal service employees must place their name on an "overtime desired" list. The lists are posted quarterly and divided by starting times ("tours"), sections and crafts. Once on the list, voluntary overtime is awarded on a rotating seniority basis to those on the list. The Postal Service first will offer overtime opportunities to the employees on the list but may require other employees to work overtime if time constraints do not permit the work to be performed exclusively by employees on the overtime lists. Ms. Allen's claim is that she was not given the opportunity for overtime and that other employees, also not on the list, were given those opportunities.

We agree with the district court that Ms. Allen's claims fail because she raises no inference that she was denied overtime on the basis of her race or in retaliation for her charges of discrimination. Ms. Allen claims that she was denied overtime opportunities on November 11, December 13 and December 20, 1999, and on January 24 and March 13, 2000. However, she cannot demonstrate that a similarly situated employee outside the protected class was treated more favorably with respect to overtime for these days. For example, Ms. Allen was denied overtime for the November 11, 1999 Veterans Day holiday. The Postal Service asserted that it denied overtime because she had not signed the appropriate list to work Veterans Day.[9] If the Postal Service does not have enough employees scheduled to work on a certain holiday, it will require employees to work on a rotating "juniority" system. Ms. Allen admits that she did not sign the list, see R.74, Ex.A at 144 (Allen Dep.); Appellant's Br. at 45, but suggests that other similarly situated non-minority employees have been able to volunteer to work holidays without signing the list. Specifically, she asserts that "the previous month Redshaw and Galyean had authorized Terry Baxter (white female) Tour 3 automation, to work eight (8) hours overtime on Saturday, October 9, 1999 [Columbus Day], even though she had not signed the holiday overtime list." Appellant's Br. at 10. This assertion in her brief is without citation to the record.[10] Fur-

---

ated employees who were given more favorable treatment. The employees with whom she compared herself were anything but similarly situated. The employees used as comparisons worked on different days, on different shifts or for different supervisors.

8. Whether the denial of overtime is an adverse employment action has not been addressed definitively in this circuit.

9. The Postal Service explains that, once the holiday list is taken down prior to the holiday, it does not accept any more volunteers.

10. This assertion appears to be repeated from

thermore, evidence in the record establishes that the situations with respect to these holidays were factually distinct. Jerry Redshaw and Bradley Galyean both occupied supervisory positions at the Postal Service and testified in their depositions that Baxter was *forced* to work on Columbus Day when an employee, who was scheduled to work, asked for leave to care for her sick child. *See* Appellee's Br. at 53 (citing R.74, Ex.G. at 53–54 (Redshaw Dep.); R.74, Ex.H at 81–82 (Galyean Dep.)). Other than Ms. Allen's unsupported assertions, the only evidence in the record indicates that the Postal Service did not permit Ms. Allen to volunteer because the supervisors were following their understanding of the overtime procedures. *See, e.g.,* R.73 ¶ 128. Ms. Allen's unsupported assertion in her appellate brief that others were permitted to work when not signing the holiday sheet does not create a factual dispute. *See Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." (internal quotation marks and citations omitted)). Because she failed to offer any evidence to create an inference of discriminatory treatment, Ms. Allen has failed to establish a prima facie case of discrimination.[11]

■ The next act of discrimination that Ms. Allen alleges is the denial of overtime for December 13, 1999. In the Postal Service, that day was labeled "Big Monday" because it is one of the largest shipping days of the year due to its proximity to the Christmas holiday. Ms. Allen actually received 2.12 hours of overtime that day but claimed she was denied additional overtime while other employees not on the overtime list were permitted to work overtime. The employees she points to as a comparison are not similarly situated. In anticipation of the large volume, the Postal Service brought in the only two employees who were not already scheduled to work.[12]

---

her memorandum in opposition to summary judgment. *See* R.79 at 19. In that motion, Ms. Allen makes this assertion but provides no other factual support from the record. Indeed, Ms. Allen asserts in this motion, and later in her appellate brief, that her claim regarding Baxter is "undisputed." *See* Appellant's Br. at 45; R.79 at 19. In contrast, she also asserts in her appellate brief that there *is* a dispute between the parties regarding whether Baxter was forced to work. *See id.* at 10. Although she claims at one point this fact is disputed and at another it is not disputed, what is readily apparent is that her claim is unsupported in the record as well as disputed by the Postal Service. *See* Appellee's Br. at 53; R.76 at 31–32 (citing R.74, Ex.G at 53–54 and R.74, Ex.H at 81–82); R.81 at 12–13 (citing same).

11. *Ms. Allen invites our attention to the affidavit of another Postal Service employee, Lloyd Leezer. See* Appellant's Br. at 18 (offering a statement from this affidavit). The Leezer affidavit does state that employees have been able to volunteer for work even though they have not signed the holiday list "as required by article 11.6 of the CBA." R.79, Ex.15 ¶ 10. In the same paragraph, Leezer states that "[t]he CBA does not prohibit employees who have not signed up to work holiday overtime from volunteering to do so." *Id.* We do not believe that this passage creates a genuine issue of material fact. The statements in the paragraph are conclusory and inconsistent. The affiant gives, moreover, no specific indication of when the purported deviations took place or under what circumstances. Moreover, neither the affiant nor Ms. Allen has pointed to any individual similarly situated to Ms. Allen who actually was permitted to volunteer to work overtime. There certainly is no attempt made to establish that any such individual worked on the day in question.

12. Ms. Allen also claims that "Jewell was asked to work overtime on the date in question even though Jewell was junior to Allen in seniority, and overtime was supposed to be

Ms. Allen cannot dispute either that the Postal Service may schedule overtime as needed or that it need not wait to schedule overtime in order to maximize overtime hours for those on the overtime desired list. The Postal Service anticipated the need for additional workers and called upon those employees not yet scheduled to work. The Postal Service did not have to wait until Ms. Allen had finished her shift to schedule the overtime. Thus, even if Ms. Allen had established a prima facie case, she failed to rebut this legitimate non-discriminatory reason for granting overtime.

■ Ms. Allen next claims that she was denied overtime on December 20, 1999, while employees not on the overtime desired list were permitted to work until 2:00 a.m. Similarly, she claims that she was denied overtime on March 13, 2000, when the Postal Service "by-passed [her] because the overtime did not come about

offered by seniority on a rotating basis." Appellant's Br. at 10. If an employee is on the overtime desired list whether an employee is actually awarded overtime depends on the number of persons on the list, relative seniority, and whom on that list last worked overtime. The overtime lists changed each quarter and were used on a rotational basis. Even the most senior employee may not be eligible for each overtime job. Ms. Allen does not offer any evidence as to the relative placement of her name to Jewell's on the list.

13. Although Ms. Allen does not offer evidence that the need to work overtime arose before her shift ended, she does offer testimony from other managers that a manager knows when overtime will be needed prior to 11:00 p.m., the end of Ms. Allen's shift. Ms. Allen responds with testimony from another supervisor that the need for overtime is evident at 10:30 p.m., based on how much mail is remaining. R.87 at 7, ¶ 172–73 (citing R.87, Ex.23 at 26 and R.87, Ex.25 at 18–19).

One obvious problem with drawing an inference of discrimination from such testimony is that the testimony does not account for

until after Allen had left the facility at the conclusion of her shift at 11:00 p.m." Appellant's Br. at 12. The Postal Service asserts that overtime was not needed until after 12:00 a.m., and the employees who worked overtime had a shift that ended after that time. Ms. Allen had gone home by the time that overtime was imperative, and thus the employees receiving overtime were not comparable in all material respects. *See Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–19 (7th Cir. 2000).[13]

■ Ms. Allen claims she was denied overtime again on January 24, 2000. She has waived this claim for failure to adequately raise it in the district court or on appeal. In the argument section of her appellate brief, Ms. Allen only states that, on "December 13, 1999, December 20, 1999, January 24, 2000,[14] and March 13, 2000, Allen was denied the opportunity to work overtime even though she was on the

times when a problem occurs after a shift ended. In that event, no supervisor could predict the need for overtime until the later time when a problem arose. The testimony assumes that there are never problems with either the machines or workers after 11:00 p.m. We do not think that a trier of fact would be justified in predicating a verdict of discrimination on such a "metaphysical doubt." *Brenner v. CFTC*, 338 F.3d 713, 720 (7th Cir. 2003). In any event, Ms. Allen has not identified any worker who finished a shift at the same time as she and who received overtime.

14. Her statement of facts did elaborate that on the January date overtime was awarded to Jewell, a non-African-American employee not on the overtime desired list. Ms. Allen explained that "Jewell had completed the overtime during Allen's shift, but there was no explanation as to why the work could not have been performed from 11:00 p.m. to 12:30 a.m." Appellant's Br. at 12. Ms. Allen does not rebut the assertion that the Postal Service can schedule overtime to correspond with overtime needs as opposed to waiting until those wishing to work overtime can perform the work.

overtime desired list, and for the most part, employees who were not on the list were permitted to work." Appellant's Br. at 39. The only statements Ms. Allen offered to the district court regarding the January 24 and March 13, 2000 claims were the summary statement which we have just set out and the further statement that "[t]he January 24, 2000, and March 13, 2000, incidents further illustrate the pattern of discrimination, and the use of Betty Jewell as part of the scheme of denial." R.79 at 16, 18; *see* Appellee's Br. at 61. These passing references are inadequate to raise a discrimination claim in this court or the district court. Ms. Allen should have put forth the relevant facts and legal theory, stating with specificity the error of the trial court. *See Ajayi,* 336 F.3d at 529 ("It is not enough for [the Appellant] merely to refer generally to these actions in her statement of facts; if she intends to challenge this aspect of the district court's ruling, she must identify the legal issue, raise it in the argument section of her brief, and support her argument with pertinent authority.").

### 3. Denial of Private Meetings

▮ Ms. Allen claims next that Donnigan refused her a private meeting with General Mail Facility Manager Oley Turner when Donnigan and Supervisor Star McDonald also were present and denied her a second request of a private meeting by instructing Ms. Allen to make her request through "official channels." Appellant's Br. at 7. We agree with the district court that the denial of a private meeting does not rise to the level of an adverse employment action. *See Ribando v. United Airlines, Inc.,* 200 F.3d 507, 511 (7th Cir.1999) ("[An] 'adverse job action must

be 'materially' adverse, meaning more than 'a mere inconvenience or an alteration of job responsibilities.'" (citation omitted)). Further, Ms. Allen gives no explanation in her appellate brief as to why the district court's conclusion is incorrect. She simply states the above facts without any further elaboration, legal argument or citation to authority. Thus, we need not give the argument additional consideration. *See Ajayi,* 336 F.3d at 529.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED